Basil M. Sukaneh v. Andrzejewski Good morning. May it please the Court. My name is Joseph Mangachi, and I represent David Andrzejewski, who is the appellant and was the defendant in the action below. This, as the Court is aware, is a 1983 action brought by the plaintiff in which he asserts a warrantless arrest and detention and a warrantless and unreasonable search and seizure, both of his person and of his automobile. The undisputed facts, as are clear in the record and found by Judge Arterton, was that on November 12, 2018, at about 8.35 p.m., it was dark and Mr. Sukaneh's car was parked, lights on, and engine running. He was in what is known as a high-crime area, among which it is well known for drug transactions as well as for prostitution. And the officer approached the car, asked the plaintiff for his license and registration, whereupon the plaintiff tendered his license and registration, but also informed Officer Andrzejewski that he was in possession of a pistol and that he had a permit for the driver's car. At that particular point in time, he was removed from the car, he was placed in handcuffs, and he was placed in the rear of the defendant's patrol car. Those are the undisputed facts. The facts raised by the plaintiff, which we must assume is true for purposes of this presentation, this argument, is that during the time that he was in the police car, he observed Officer Andrzejewski searching both the compartment of the car and the trunk of the car. And Officer Andrzejewski denies that. However, assuming the facts as the plaintiff argues, there was no violation of the plaintiff's constitutional rights, beginning first with the initial approach, which was clearly authorized under Terry. Well, the district court was focused on a couple of things. The district court was focused, let's take the easier ones, what I think are the easier ones first. The search of the trunk, what possible justification is there for the search of the trunk? Wouldn't that require probable cause? Well, there are cases that I pointed to the court, actually the district court, the circuit court for the District of Columbia indicated that it may be probable cause may exist simply because a pistol exists within an automobile. Well, but in the District of Columbia, I take it there are rules about permits. Is there any case in which someone, how can there be probable cause to believe that there is an firearm? The answer to that is it really doesn't matter whether it was permitted or not. What he was held for was to ascertain whether or not the permit was or was not valid. Fine, fine. Let's assume that. Let's assume that. Okay. So now, now we... Excuse me. I'm sorry. Assuming that... Yeah. ...there, it is a reasonable step to verify, just as you hand the person your license and registration, hand the officer your license and registration, the officer usually goes back to the car and punches some things in to see if that's legitimate, right? Yes, sir. Assume that that can be done here too. And assume further that until that is done, the, you need to do something to separate the person from the firearm. Correct. What, what gets you into the trunk? Why is there affirmative probable cause? Why would a reasonable person believe that there is something unlawful happening, even if we assume that the officer has a right to check into that? And my response to that... He's not going to find the answer in the trunk. No, he's not. But that doesn't mean he doesn't have probable cause to believe that there may be other weapons, ammunition, or other contraband, just as the, as in the United States versus Brown case that was pointed out by the appellate court there. In other words... He also has unlawful possession of other firearms. Well, first of all, we don't know from the record whether at the time this search was allegedly done, which remember my officer denies... Yeah, but you need, you need, I think, I'm sorry to interrupt, but you're going to tell me, I'm sure, that at the time that this search happens, the officer doesn't yet know whether the permit is legit, right? That's what the record would indicate, yes. But then why, but why is there an affirmative reason to think it isn't? Even if the officer has a right to detain the person until verifying that the permit is legitimate, why is any of the facts that you've said an affirmative reason to think that there is some additional illegality happening in the trunk? Because the existence of the gun itself, whether he had a permit for it that was valid or invalid, really doesn't matter. Because when you take what the officer would have had had he done this, Your Honor, he's got a car that's parked running with the engine in a high-crime area at night, an individual who admits that he's in possession of a pistol, and there's an area, this is also an area in which drug transactions regularly occur. You put all those pieces together, and now you have a person with a gun in a... Has probable cause to believe that what crime has been committed? Not that a crime, no. This is where I think Judge Arterton, and perhaps we didn't make our point clear at the trial level, her assumption was that there was no probable cause to arrest this individual for having possession of a pistol without a permit. So therefore, she concluded, there was no authority to do any search. But what is the probable cause? The probable cause is to search, not to arrest. And our contention is, based on the language in Brown as an example, that the mere presence of the gun itself, legal or unlegal, in an area that's known for drug transactions was enough to allow not only a search of the compartment of the car, but also of the trunk. So there's probable cause to believe that evidence of narcotics transactions will be found in the trunk, is that what you're saying? Or as the court points out in Brown, other weapons, ammunition, or any other contraband. But that's the whole point of... Why is it different to have a permitted gun? And again, I understand, I'm assuming that the officer can detain the person until verifying the permit. But isn't the answer then, you control the person, keep him away from the gun, you do whatever computer magic you do to check the permit, and if the permit comes back as legitimate, why do you get to skip that step and go straight to the trunk? And if it does come back as legitimate, then you lose probable cause to go to the trunk, right? I don't think that a reasonable officer can assume that someone who is legally in a possession of a pistol in an area known for drug transactions at night with a running car can necessarily say that there's no probable cause to look further. And that's the point about qualified immunity, because that's why we're here. We're here about qualified immunity. There's no authority that I am aware of at the time of this incident by this court or the United States Supreme Court in similar situations, fact-specific as they must be for qualified immunity, that would say that under these factual circumstances that it was a violation of constitutional right that was clearly established. It was not clearly established at the time of this event. Yes, Your Honor. I'm sorry. I'm just trying to understand how this works, this theory works. So you have somebody who lives in the suburbs, not a high-crime area at all. They've got a licensed firearm. It's in their car. There's no probable cause to pull them over when they're in their own neighborhood. But if they drive through what's known as a high-crime neighborhood, there's now probable cause to believe that they're engaged in narcotics trafficking because they're now in possession of that licensed weapon in a high-crime area? No. I think the difference is that we have to be fact-specific in terms of qualified immunity. So we have to accept the fact that this was, in this case, an undisputed high-crime area, not only a high-crime area, but an area known for drug transactions. We all know that with drug transactions, and officers know this as well as us, that people engaged in drugs carry guns. And the gun may or may not be legal. You may have someone who's dealing in drugs who, for whatever reason, was able to procure a valid pistol permit. But if now they have that valid pistol permit, and they're in a high-crime area that's known for drug transactions, now we've got a different situation as far as the officer. So the individual that I just hypothesized, when they drive from their neighborhood into the undisputedly high-crime area, now there is probable cause because they have a firearm and they're in a high-crime area where there are drug transactions. Well, I think we have to take it a step at a time. The first question is, where's the reasonable suspicion in that particular situation to even inquire? If you just have someone from the suburbs who has a pistol in their car, and they happen to be driving through a high-crime area, I don't think that's reasonable suspicion. Well, how do you know this person, the plaintiff in this case, is not from the suburbs and was not just driving through this high-crime neighborhood? It doesn't matter where he's from. Actually, he wasn't from Waterbury. He was there under his claim that he was looking for some real estate at 8.45 p.m. in darkness with his motor running. So the point is, is that he decided to come to Waterbury. He decided to park his car for drug transactions with a gun in his car. Those are the facts of this case. And our point and our central issue on appeal is qualified immunity with regard to the fact that in this circuit, there has never been a clearly established law that says that in this kind of a situation, similar to what was said to be proper in U.S. v. Brown, that it is appropriate. Just the mere presence of a gun alone is enough to search the rest of the car. But we had more than that here. We not only had a gun in the car, we had a person who has had a car running, motor on, high-crime area, known for drug transactions at night. Can I just ask, I'm sorry, I was just going to ask a factual question about what point in this sequence of events does the officer confirm that the permit is lawful? The record, well, first, okay, here's what the record indicates. Actually, maybe let me ask you it this way. Let's say hypothetically that it was prior to the search of the trunk that he determined that the permit was lawful. In your view, he still has probable cause? I would say he would because of the fact that the presence of the gun alone, whether it checked out to be legal or not, just means that, okay, he has legal authority to possess that pistol. If it didn't turn out valid, now he's guilty of a crime because he's now possessing a pistol without a permit. But that doesn't change the fact that he's in possession of a pistol in this area known for drug transactions in darkness while his car is running. That's the point of this case that I think differentiates it and why qualified immunity would apply because there's nothing that is beyond dispute with regard to the situation that the officer wouldn't be, it wouldn't be appropriate for him to go ahead and search both the car and the trunk. Can I? Yes, Your Honor. One of the things I'm struggling with and I realize it's not squarely what the arguments are on the brief. I'm sorry, Your Honor. I didn't hear the first part of your question. This is a question that I'm acknowledging is not squarely at the center of what the debate is in this case. But I'm looking at the reasonable suspicion for the traffic stop or the Terry stop to begin with. And I understand your position is running car pulled over in a high crime area gives the reasonable suspicion. Am I right about that? Yes, Your Honor. The district court, as I'm understanding it, concluded that there was a traffic violation for obstructing traffic. And I'm trying to reconcile that with the record because it seems that the undisputed evidence is that he was pulled over to the side by the curb, wasn't blocking any driveways. And so I'm wondering whether your position is that he was in fact committing a traffic violation or whether your theory for the Terry stop to begin with was solely the high crime area being in a running car. The officer asserted that he was in violation of the statute that Judge Arderton cited with regard to a traffic violation. Yes, that was part of what her decision was that where she indicated that there was sufficient reasonable suspicion for the initial Terry stop. And so I'm sorry, did the officer, and I probably missed it, did the officer testify that he was obstructing traffic in some way? We submit, well, this was on summary judgment. So what we submitted was an affidavit of the officer. May I have one moment, Your Honor? Fine, yeah, thank you. I appreciate it. I'm sorry. There's nothing that I could find in the affidavit that specifically talks about the traffic violation. It's my recollection that that may have been in his police report, but that isn't included in the record. He just indicates that he observed him in the moving around, well, he observed the car with the engine on. He observed him moving around in the vehicle prior to making contact with him, which the plaintiff admits, except the plaintiff says that he was reaching for his cell phone, which was on the, on some sort of device held on the windshield. But, Your Honor, back to your... So on this record, you're not relying on a purported traffic violation to justify the initial stop. You're relying on the running engine and the being in a high crime area and moving in a way that feels suspicious. Yes, Your Honor. Okay, thank you. And may I ask one other question, just about what was argued below? I was prepared to entertain an argument that in this situation, the officer was entitled, without probable cause, as part of a Terry stop where there is a gun in the car, conceitedly, to separate the individual from the gun and detain him as was done, without probable cause. But I'm not sure that's before us, because as I read the record below, your predecessor counsel said, conceited, we're beyond a Terry stop. It's our position that there is now probable cause, and this is repeated Yes, Your Honor. So that's agreed, that this was a... It is. Yes, the probable cause... I understand your argument that there is probable cause. Right. But the point is, there's no contention being made in this case that even with a reasonable suspicion, that with a mere reasonable suspicion, this kind of handcuffing and being put in the back of a police car would still be lawful under these circumstances. Yes, Your Honor. And the search of the compartment of the car would clearly have been authorized as a protective search under Michigan v. Long. So the real... But isn't the record here that the gun is sort of, the gun for which the permit allegedly exists is in plain sight? No, it wasn't. No. What the record reflects, Your Honor, is that the plaintiff told the officer that he was in possession of a pistol, and the pistol was located in the side pocket of the door. So it was not in plain view. Okay, but why isn't that... So why would there be a reasonable basis to... It's the same as your argument about the trunk then, really. That for security, it's not enough to find that gun. You have to examine the entire compartment in order to be sure there is no gun. What our position is, Your Honor, is there is a difference between the compartment and the trunk. And clearly under Michigan v. Long, the court talks about the compartment as being something that can be done. The court in Michigan v. Long doesn't address specifically whether and under what circumstances the trunk... Right. So at least as a qualified immunity matter, your position would be even if Long could be distinguished and a reasonable court could conclude that this is different than that because there's a conceded gun, the location is identified, and a permit is provided. Still, that kind of distinction, a reasonable officer would be entitled to rely on Michigan v. Long, whether or not we agree with that reading of Long. That's correct. And the final point is when you go to the next step as far as the trunk is concerned, we don't have any clearly defined right that prohibits that kind of conduct. That's why qualified immunity would apply in this case. The closest this court has come, and Judge Arderton cited it, is the Hussein case. But in Hussein, this court noted that it was a knife that wasn't even big enough to meet the Boy Scouts standard. It wasn't something that was a dangerous instrumentality. It wasn't something that could potentially be illegal. And, oh, by the way, it wasn't a knife that was picked up in a running car in an area known for drug transactions. So that's the difference here. And so Officer Andrzejewski was not on fair and reasonable notice of a clearly defined right that under these circumstances, had he done what the plaintiff claims he did, which, he would have been protected under qualified immunity. All right. Thank you. Thank you very much, and I appreciate it.